**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BITUMINOUS CASUALTY CORPORATION, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>GEORGE POLLARD, )<br>)<br>    Defendant. )<br>) | Case No. CIV-10-379-M |

**ORDER**

    This case is scheduled for trial on the Court's December 2011 trial docket.

    Before the Court are Plaintiff's Motion for Summary Judgment and Brief in Support, filed October 26, 2011 and Defendant George Pollard's Motion for Summary Judgment on the Issue of Insurance Coverage, filed November 1, 2011. On November 9, 2011, defendant's response to plaintiff's motion for summary judgment was filed. On November 15, 2011, plaintiff's response to defendant's motion for summary judgment was filed. Based upon the parties' submissions, the Court makes its determination.

**I.  Introduction**

    This case arises out of an insurance coverage dispute between plaintiff Bituminous Casualty Corporation ("plaintiff") and defendant George Pollard ("defendant"). Plaintiff seeks a declaration of the rights and obligations of the parties under the Uninsured Motorist Endorsement to a Bituminous Policy issued to defendant's employer, North Star Well Services, Inc. ("North Star"). This policy listed a 1975 Franks 1287 Double Drum w/96' Franks Derr ("workover rig truck"), owned by North Star, as a covered vehicle. North Star is in the business of servicing and repairing

the underground workings of wells.

On June 24, 2008, defendant was ordered to go get the workover rig truck listed as a covered vehicle on the instant policy from one well site location and move it to a new well site location to perform work on that well. Defendant was crew chief of the workover rig truck and in charge of a four person crew. Also on June 24, 2008, defendant and his crew were assigned to service a pump jack unit at the new well site. After driving the workover rig truck to the new well site defendant backed the workover rig truck up to the well hole, stabilized it with hydraulic leveling jacks, raised the 96 foot derrick on the back of the workrig truck and secured the derrick to the ground. After securing the raised derrick, defendant climbed onto the pump jack at the well site and began working to repair the pump jack while standing on the gearbox of the pump jack by utilizing a utility winch line attached to the workover rig truck. There was a problem with the pump jack which caused the arm of the pump jack to be stuck in an upward position. While holding on to the utility winch line attached to the workover rig truck, defendant directed his co-employee, Dusty Pollard, to attempt to remove the slack out of the line. During this process defendant was hit in the head by the equalizing arm of the pump jack knocking defendant off the pump jack and into the motor, causing him injuries.

Approximately one year after the June 24, 2008 accident, defendant made a claim for uninsured motorist benefits under plaintiff's UM policy. Plaintiff denied defendant's claim for the reason that defendant was not occupying the workover rig truck at the time of the accident and, thus, did not qualify as an insured under the terms of the policy. When defendant disputed the denial of his uninsured motorist claim, plaintiff commenced this lawsuit seeking a declaratory judgment that its claim decision was correct. Defendant has filed a counterclaim asserting that in denying his

uninsured motorist claim plaintiff breached the policy of insurance and acted in bad faith by failing to reasonably and fairly investigate, evaluate and pay his claim. Both parties now move for summary judgment.

Plaintiff seeks summary judgment against defendant on the basis that no genuine issues of material fact exist as to whether the UM endorsement of the relevant insurance policy afforded coverage for defendant's June 24, 2008 accident. Specifically, plaintiff contends it is entitled to summary judgment in this case because defendant was not "occupying" the workover rig truck at the time of defendant's accident and, thus, defendant is not entitled to coverage. Plaintiff also contends defendant's injuries did not arise out of the transportation use of the workover rig truck. Finally, plaintiff seeks summary judgment as to defendant's counterclaim for bad faith arguing defendant's bad faith claim is without merit.

Defendant contends it is also entitled to summary judgment on basically the same issue as plaintiff, the issue of insurance coverage under plaintiff's UM policy. Specifically, defendant argues he was "occupying" the workover rig truck at the time of the accident and, thus, is entitled to coverage under plaintiff's UM policy.

## II.   Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir.

1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.　Discussion

　　A.　Defendant's Bad Faith Claim

The Oklahoma Supreme Court first recognized the tort of bad faith by an insurer in the case of *Christian v. Am. Home Assurance Co.*, 577 P.2d 899 (Okla. 1978). In so doing, the court held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at 904. The court further recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for

withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the insurer's actions must be evaluated in light of the facts the insurer knew or should have known at the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. *Oulds*, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably

5

appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id*. at 612 (internal quotations and citation omitted). Thus, "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith." *Oulds*, 6 F.3d at 1442.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to defendant and viewing all reasonable inferences in defendant's favor, as the Court must when addressing a motion for summary judgment, the Court finds defendant has failed to present sufficient evidence to create a genuine issue of material fact as to whether plaintiff acted in bad faith and violated its duty to deal fairly and act in good faith with defendant. Specifically, the Court finds that construing all of the evidence submitted in favor of defendant, he has simply not established what might reasonably be perceived as tortious conduct on the part of plaintiff. Having reviewed all of the evidence, the Court finds there is simply a legitimate dispute between the parties concerning whether defendant should be covered under plaintiff's UM policy.

Particularly, the Court would find that plaintiff's not interviewing defendant prior to the denial of his UM claim submitted over a year after the accident is not evidence of bad faith in this case. It remains uncontested here that two days after the June 24, 2008 accident plaintiff's workers compensation adjuster immediately opened a file, determined that defendant's injuries were compensable under plaintiff's workers compensation plan and began paying weekly benefits to defendant. The evidence submitted on summary judgment in this case also includes plaintiff's workers' compensation adjusters' notes which reflect a telephone call to defendant's home two days after the accident and defendant's own description of the accident on his workers' compensation

Form 3-Notice of Accidental Injury and Claim for Compensation submitted prior to his UM claim. While the reliance on the investigation and documentation submitted in support of defendant's workers' compensation claim may have been dated, the Court finds it reasonable for plaintiff to rely on said investigation in denying defendant's subsequent UM claim. Accordingly, based upon the above, the Court finds that plaintiff is entitled to summary judgment as to defendant's bad faith claim.

B.  Parties' Insurance Coverage Claims

In Oklahoma, insurance coverage disputes are governed under contract law. *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017, 1019 (Okla. 2002). If a court finds an insurance policy's terms are free from doubt or unambiguous, "the language of an insurance policy must be accepted in its plain, ordinary and popular sense". *McDonald v. Schreiner*, 28 P.3d 574, 577 (Okla. 2001). Whereas parties to a contract are free to govern its risks and terms, "once agreed upon, the parties...are bound by the terms of the contract, and courts will not rewrite those terms". *Redcorn*, 55 P.3d at 1019. Because it is fundamental that an insured is chargeable with knowledge of the terms of the insurance policy, the failure of an insured to read the insurance policy provisions does not relieve him from its provisions. *Travelers Ins. Co. v. Morrow*, 645 F.2d 41, 44 (10th Cir. 1981). Therefore, the insured has a duty to read and know the contents and legal effects of the terms of his insurance policy. *Id.* (internal citations and quotations omitted).

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to the non-moving party and viewing all reasonable inferences in its favor, as the Court must when addressing a motion for summary judgment, the Court finds that there are disputed issues of material fact as to whether defendant was "occupying"

an insured vehicle. Additionally, the Court finds there exist factual disputes as to whether the UM endorsement provides coverage for defendant's accident. Because both parties seek summary judgment relative to the same factual issues, i.e. whether defendant was occupying a covered vehicle at the time of his accident and thus entitled to coverage, the Court finds that it would be improper for this Court to make any ruling regarding the parties' rights and obligations under the UM provision of the policy and, thus, plaintiff's motion for summary judgment and defendant's motion for summary judgment as to insurance coverage should be denied.

IV.   Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiff Bituminous Casualty Corporation's Motion for Summary Judgment [docket no. 54] as follows:

(1) the Court GRANTS plaintiff's motion for summary judgment as to defendant George Pollard's bad faith claim, and

(2) the Court DENIES defendant's motion for summary judgment as to UM coverage for George Pollard.

Also for the reasons set forth above, the Court DENIES defendant George Pollard's motion for summary judgment on the issue of insurance coverage [docket no. 59].

**IT IS SO ORDERED this 1st day of December, 2011.**

*[Signature: Vicki Miles-LaGrange]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE